UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GRISSEL CAMPOS TIBURCIO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:26-cv-00104-TWP-MJD |
| | ) |
| SCOTT MAPLES, | ) |
| SAMUEL OLSON, | ) |
| PAM BONDI, | ) |
| KRISTI NOEM, | ) |
| TODD LYONS, | ) |
| | ) |
| Respondents. | ) |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Grissel Campos Tiburcio ("Campos Tiburcio") now petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or a bond hearing pursuant to 8 U.S.C. § 1226(a). Dkt. 4. Because the undisputed facts demonstrate that Campos Tiburcio is eligible for bond, the Court **GRANTS** her petition by directing that she be afforded a bond hearing or released from detention. Furthermore, the Court **GRANTS** Campos Tiburcio's Motion for an Extension of Time to File a Reply, dkt. [12], to the extent that the Court deems her reply as timely filed.

**I.    Background**

Campos Tiburcio is a citizen of Mexico who entered the United States with her daughter around March 8, 2024. Dkt. 1-2 (ERO Narrative). After being arrested near the U.S.-Mexico border in Sasabe, Arizona, she was processed as an expedited removal under 8 U.S.C. § 1225(b)(1). Dkt. 1-3 at 1 (Notice to Appear). On April 19, 2024, Department of Homeland Security ("DHS") vacated the § 1225(b)(1) order after an immigration judge determined that Campos Tiburcio and

1

her daughter established a possibility of eligibility for asylum. *Id.*; dkt. 9-1 at 11. Campos Tiburcio and her daughter were then served with a Notice to Appear, initiating full removal proceedings pursuant to 8 U.S.C. § 1229a. Dkt. 1-3 at 1. The Notice to Appear states that Campos Tiburcio is subject to removal under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") because she was "not then admitted or paroled after inspection by an Immigration Officer." *Id.* The "arriving alien" box is unmarked. The Notice ordered Campos Tiburcio to appear for an immigration court date on October 30, 2025 in Louisville, Kentucky. Campos Tiburcio was released. *See* dkt. 4 ¶ 17.

Campos Tiburcio appeared for the immigration hearing in Kentucky on October 30, 2025, but was told that she did not have a hearing. *Id.*, ¶ 18. On November 2, 2025, an immigration judge signed an order removing Campos Tiburcio for failing to appear at her immigration hearing. *Id.*, ¶ 19; dkt. 1-4 (Order of Removal). On December 18, 2025, federal immigration agents arrested Campos Tiburcio at her residence in Clarksville, Indiana, and transported her to Clark County Jail where she remains detained. Dkt. 9-1 at 6. Immigration agents served Campos Tiburcio with a Warrant of Removal/Deportation as well as a Warrant for Arrest of Alien (Form I-200), which authorized the agent to take her into custody under 8 U.S.C. § 1226. Dkt. 9-1 at 1–4.

On December 22, Campos Tiburcio filed a Motion to Reopen the order of removal, which stayed the order of removal pursuant to 8 C.F.R. § 1003.23(b)(4)(ii). *Id.*, 21; dkt. 1-5. The record does not show that Campos Tiburcio moved for or has been given a custody re-determination hearing.

## II. Discussion

Campos Tiburcio claims that her current detention violates the Due Process Clause of the Fifth Amendment (Count I) and the INA (Count II). Dkt. 4 ¶¶ 33–42. Respondents argue that

Campos Tiburcio is lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2)(A) and that her detention is constitutional. Dkt. 9.

The Court finds that Campos Tiburcio's detention is governed by § 1226(a) and that it is unlawful because she has not been afforded a bond hearing. Because Campos Tiburcio is entitled to habeas corpus relief on these grounds, the Court does not address her other arguments.[1]

### A.  8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—

---

[1] Specifically, Campos Tiburcio argues that she is a class member entitled to relief through the declaratory judgment the Central District of California issued in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM. In that case, the district court certified a class under Federal Rule 23(b)(2) that seemingly would include Campos Tiburcio and held that DHS's widespread application of § 1225(b)(2) was contrary to the INA, vacating DHS's Policy under the Administrative Procedure Act, and entering final judgment. *Bautista v. Santacruz*, 2025 WL 3713981, *32 (C.D. Cal. Dec. 18, 2025). The applicability of *Maldonado Bautista* to resolve habeas actions outside the Central District of California is unclear. In *Trump v. J.G.G.*, the Supreme Court reiterated that (a) any claim implying the invalidity of the claimant's custody "must be brought in habeas corpus," and (b) habeas jurisdiction lies only with the district where the claimant is confined. 604 U.S. 670, 671–72 (2025) (applying *Nance v. Ward*, 597 U.S. 159, 167 (2022); *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). Because the Court finds that Campos Tiburcio is entitled to habeas relief, it need not resolve whether she is entitled to relief under *Maldonado Bautista*.

>> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
>> (A) bond . . . ; or
>>
>> (B) conditional parole . . ..

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) (discussing Section 1226(a)'s implementing regulations allowing for an initial bond hearing before a neutral decision-maker). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

### B. Campos Tiburcio Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)

Campos Tiburcio argues that she can only be detained under § 1226(a). Dkt. 4 ¶¶ 24–27. Respondents argue that she can only be detained under § 1225(b)(2)(A). Dkt. 9 at 4–6. As many courts in this district have found, Campos Tiburcio's interpretation of the statute is more convincing from the standpoint of the statute's text, context, and history.

####  i. Statutory Text

As seen above, § 1225(b)(2)(A) states, "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained[.]" 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Respondents argue that § 1225(b)(2)(A) applies to everyone who fits into the category of an "applicant for admission" per § 1225(a)(1). Dkt. 9 at 5. Thus, § 1225(b)(2)(A) applies to Campos Tiburcio because she is an "alien" who is "present in the United States" who "has not been admitted." *Id.* This Court as well as many other district courts across the country have found this interpretation unpersuasive in part because it makes the very next

5

phrase in the clause, "an alien seeking admission," redundant and meaningless. *See Goyo Rodriguez v. Olson, et al.,* No. 4:26-CV-00026-TWP-KMB, 2026 WL 372285, at *2 (S.D. Ind. Feb. 10, 2026); *Chesme Bazurto v. Olson, et al.*, No. 1:26-cv-00122-SEB-CSW, 2026 WL 285993, *2 (S.D. Ind. Feb. 3, 2026); *Delgado Avila v. Crowley*, No. 2:25-cv-00533-MPB-MJD, 2025 WL 3171175, *2 (S.D. Ind. Nov. 13, 2025); *Cazarez-Gonzales v. Olson*, No. 2:25-cv-590-JPH-MJD (S.D. Ind. Dec. 5, 2025), dkt. 19 at 8.

The Seventh Circuit recently explained that "seeking admission" cannot be read as synonymous with "applicant for admission." *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)) ("[E]very clause and word of a statute should have meaning.")).[2] "If an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Id.* (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08, 130 (2010)). "[T]his presumption is 'strongest when an interpretation would render superfluous another part of the same statutory scheme,' as would be the case here." *Id.* (quoting *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)). Thus, the fact that "an alien seeking admission" directly follows "applicant for admission" should dissuade courts from viewing the terms as interchangeable.

The panel in *Castañon-Nava* also highlighted that Congress's own definition of "applicant for admission" in § 1225(a)(1) does not include "an alien seeking admission." They state,

> [i]t is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an "applicant for admission" to "an alien present in the

---

[2] The Court cites *Castañon-Nava* as persuasive precedent. *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' — F.4th —, 2025 WL 3552514, at *8. But the statutory-interpretation issue that the opinion resolved was one purely of *law*, and any adjustment to the *factual* record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

6

>United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). It could easily have included noncitizens who are "seeking admission" within the definition but elected not to do so.

*Id.* In addition, "Congress chose to refer in § 1225(b)(2) to '*an* alien seeking admission,' and not '*the* alien seeking admission.'" *Mejia Diaz v. Noem*, 2025 WL 3640419, at *5 (N.D. Ind. Dec. 16, 2025) (emphasis in original). This is an important distinction because "'the' is 'a function word . . . indicat[ing] that a following noun or noun equivalent is definite or has been previously specified by context.'" *Id.* (quoting *Nielsen*, 586 U.S. at 408). In contrast, the use of "an" implies that "an alien seeking admission" is a "narrowing of which 'applicants for admission' are subject to the terms of § 1225(b)(2)." *Id.*

Respondents cite the recent Fifth Circuit Court of Appeals decision, which upheld the government's interpretation of § 1225(b)(2)(A) in finding that "seeking admission" is a permissible redundancy for "applicant for admission." Dkt. 9 at 9–10; *Buenrostro-Mendez v. Bondi*, 2025 WL 323330, at *5 (5th Cir. Feb, 6, 2026) ("The Supreme Court has observed that 'redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication' . . . That seems doubly true where the ordinary meaning of the terms involved overlap. Because being an applicant ordinarily entails seeking something, it seems natural to use the words somewhat interchangeably.") (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)).

The Fifth Circuit's decision is neither binding nor persuasive on this Court. This Court continues to defer to the Seventh Circuit's recent interpretation of the statute, which finds that "seeking admission" cannot be logically seen as synonymous with "applicant for admission" without violating several established canons of statutory interpretation. *See Castañon-Nava*, 161

7

F.4th at 1061. Indeed, in dissent, Fifth Circuit Court of Appeals Judge Douglas emphasized that the government's interpretation of "seeking admission" creates an inexplicable redundancy within the same sentence, contravening "a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." *Id.*, at \*12 (quoting *Williams v. Taylor*, 529 U.S. 362, 404 (2000)).

Viewing "an alien seeking admission" as a meaningful phrase, its plain meaning does not apply to Campos Tiburcio.[3] For one, "seeking admission" is written in present-tense active language. *See United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes."). As this Court has explained, "'seeking' means 'asking for' or 'trying to acquire or gain' and implies some kind of affirmative action on the part of the applicant." *Alejandro v. Olson*, 2025 WL 2896348, at \*7 (S.D. Ind. Oct. 11, 2025); *see also Beltran Barrera v. Tindall*, 2025 WL 2690565, at \*4 (W.D. Ky. Sept. 19, 2025) (rejecting the respondents' interpretation of section 1225(b)(2) to cover all aliens who are present without being admitted because "[t]he term 'seeking' 'implies action'" and "those who have been present in the country for years are not actively 'seeking admission.'"). Moreover, when paired with "admission," seek*ing* implies actively asking for admission at the threshold of entry. Per the INA, "[t]he terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(13)(A) (emphasis added). "Thus, an alien who is 'seeking admission' is one who is seeking 'lawful *entry* . . . into the United States after inspection and authorization by an immigration officer.'" *Mejia Diaz*, 2025 WL 3640419, at \*5 (emphasis added).

---

[3] Unlike "applicant for admission," "an alien seeking admission" is not defined within the statute. Therefore, in construing the statutory language, the Court gives the text its plain meaning. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018) (directing courts, in the absence of a statutory definition, to be guided by the plain meaning of the text).

8

The plain meaning of "seeking admission" cannot apply to Campos Tiburcio's December 2025 encounter with immigration agents in Indiana, where she was served with an administrative warrant for her arrest at her residence in the interior of the country. At that point, Campos Tiburcio had already *entered* the United States—albeit unlawfully—and could no longer be conceived of as "an alien seeking admission" within the context of § 1225(b)(2)(A). Indeed, more than a year before her arrest, DHS had vacated her § 1225(b)(1) order, served her with a Notice to Appear for full removal proceedings in Kentucky, and released her into the United States.

### ii. Statutory Context and Framework

Respondents' interpretation of § 1225(b)(2)(A) does not make sense when read, as it must be, in the context of the rest of § 1225 and the INA's statutory framework. "[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted).

Considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" aliens attempting to enter the United States at a border or a designated port of entry. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and it repeatedly refers to "arriving" aliens throughout. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which

9

they believe aliens are being brought into the United States"). The statute further explicitly carves out exceptions for "crewm[e]n" and "stowaway[s]" in § 1225(b)(2)(B), which further demonstrates that § 1225 applies broadly to "arriving" noncitizens—not just § 1225(b)(1). In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports.

As Respondents concede, § 1225 as a whole governs "inspection." Dkt. 7 at 8. Though not defined in the statute, regulations for "Inspection of Persons Applying for Admission" characterize inspection as occurring at or near the U.S.-Mexico or U.S.-Canada border or a port of entry. *See* 8 C.F.R. § 235.1(f) *et seq*. (referring to aliens seeking admission at a "port-of-entry;" inspecting aliens who have been "brought to the United States . . . after having been interdicted in international or United States waters;" and repeatedly referring to "land border" and "land border port-of-entry" throughout). However, "[n]o inspection or screening takes place for a noncitizen residing in the United States who is subsequently detained because his or her parole has expired." *Walizada v. Trump*, 2025 WL 3551972, at *11 (D. Vt. Dec. 11, 2025). Indeed, the Notice to Appear from April of 2024 charges Campos Tiburcio as inadmissible because she was "not then admitted or paroled *after* inspection by an immigration officer." Dkt. 1-3 (emphasis added). Respondents have not explained how or why Campos Tiburcio would need to be inspected on a continuous basis.

Respondents' interpretation also disregards the relationship between § 1225 and § 1226 within the INA. While § 1225 focuses on "inspection" of "arriving aliens," § 1226 pertains to the "[a]pprehension and detention of aliens." The plain language here suggests that § 1226—not § 1225—applies to Campos Tiburcio's December 2025 arrest because she is an "alien," who was "apprehended" and "detained" after a warrant was issued for her arrest. Indeed, the warrant explicitly authorized her arrest under § 1226. The fact that these two classes of noncitizens would

10

be treated differently makes sense within broader immigration law. As the Seventh Circuit explained, "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law. Indeed, '[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.'" *Castañon-Nava*, 161 F.th at 1061 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)); *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.").

Last, Respondents' interpretation of § 1225(b)(2)(A) would make the recently enacted amendment to § 1226(c) superfluous. Congress passed the Laken Riley Act in 2025 to amend section 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of aliens not eligible for a bond hearing are aliens not admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). Under the Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act. As seen above, courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). Indeed, the dissent in the recent Fifth Circuit decision emphasized that the government's position that § 1225(b)(2)(A) and § 1226(a) and (c) can overlap "drastically understates the significance of what it proposes" since it would make the Laken Riley Act's

11

exceptions for inadmissible aliens completely unnecessary. *Buenrostro-Mendez*, 2026 WL 323330, at *13 (dissent).

### iii. Prior Agency Usage and History

Respondents' argument also fails when considering the statute's prior usage and history. The government's citation to *Buenrostro-Mendez* emphasizes that Congress passed the current detention framework as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), and one aim of this legislation was to equalize the treatment of aliens at the border and unadmitted aliens within the interior in removal proceedings. Thus, according to Respondents, it makes sense that the statute would be amended to bring both categories of unadmitted aliens under the same detention scheme. Many courts have rejected this argument because it takes one statutory goal and applies it to the entire statutory scheme. *See Buenrostro-Mendez*, 2026 WL 323330, at *17 (dissent) ("[T]he reference to a single sentence of a House Report suggesting Congress wished to equalize treatment of noncitizens at the border and in the interior does not give the government the footing it thinks it does."); *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1332 (W.D. Wash. 2025) (disagreeing with the government's interpretation of the legislative history; "the government err[s] in its analysis by identifying *one* of Congress's concerns in enacting IIRIRA and then treating it as Congress's sole concern driving the statute.") (internal quotation omitted). Per *Rodriguez*, the IIRIRA resolved the "'entry doctrine anomaly,'" by placing unadmitted aliens "'on equal footing in removal proceedings under the INA'" so that they bore the same burden of proof. *Id.* (quoting *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020)). "But creating a level playing field in removal proceedings 'says nothing about detention pending the outcome of those proceedings.'" *Id.* (quoting *Romero v. Hyde*, 795 F. Supp. 3d 271, 287 (D. Mass. 2025)).

The legislative history also conveys that the IIRIRA intended to maintain the status quo of treating the two categories of unadmitted aliens distinctly for the purposes of detention. *See* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (Section 1226(a) "restates the current provisions . . . regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States."); H.R. Rep. No. 104-828, at 209 (1996) (Conf. Rep.) ("New [§ 1225(b)] establishes new procedures for the inspection and in some cases removal of aliens arriving in the United States."). Indeed, following the IIRIRA, the Executive Office for Immigration Review ("EOIR") drafted regulations explaining that, generally, people who entered the country without inspection are subject to detention under § 1226(a). *See* dkt. 11 at 8–9; 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Until the recent policy shift in July of 2025, the government previously applied section 1226(a) to unadmitted aliens, such as Campos Tiburcio, who were arrested in the interior of the country. *See Matter of Hurtado*, 29 I&N Dec. 216 n.6. ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection."). While an agency's interpretation of a statute is not dispositive, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), the statute's prior usage and history may be considered along with the plain text of the statute, and the statutory context.  Here, that weighs in favor of finding that § 1226(a), not § 1225(b)(2)(A), applies to Campos Tiburcio.

### III. Scope of Relief

Campos Tiburcio is entitled to habeas relief because her continued detention without a bond hearing violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The

13

remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Campos Tiburcio requests immediate release from custody or, in the alternative, an individualized bond hearing. Dkt. 4 at 10. Immediate release is the customary remedy in habeas proceedings. *See Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, the Court finds that it would not be in the interests of justice to order Campos Tiburcio's immediate release. Campos Tiburcio maintains—and the Court agrees—that her detention without consideration of bond is contrary to law because her detention is authorized by § 1226(a), which makes her eligible for discretionary release but also allows the government to "continue to detain" her. 8 U.S.C. § 1226(a)(1). Campos Tiburcio's custody is not unlawful because of the very fact that she is detained. Rather, her custody is unlawful only to the extent the government refuses to consider whether she may be released as the law requires. Thus, the Court orders Respondents to provide Campos Tiburcio an individualized bond hearing as required by § 1226(a) and its regulations.

### IV. Conclusion

The Court **GRANTS** Campos Tiburcio's motion to extend the deadline to file a reply, dkt. [12]. The Court **GRANTS** the petition to the extent that no later than **February 27, 2026**, Respondents must either: (1) provide Campos Tiburcio with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Campos Tiburcio from custody, under reasonable conditions of supervision. No later than **March 3**, **2026,** Respondents must file documentation certifying that they have provided Campos Tiburcio with a bond hearing. If Respondents release Campos Tiburcio, then they must file documentation certifying her release. The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: 2/20/2026

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Rania Attum
rania@attumlaw.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov